UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD KENDALL,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-14-332-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment. ECF No. 17, 18, and plaintiff's reply. ECF No. 19. The parties have consented to proceed before a magistrate judge. ECF No. 9. After reviewing the administrative record and the parties' briefs, the court **grants** plaintiff's motion for summary judgment, **ECF No. 17,** and remands for further administrative proceedings.

**JURISDICTION**

Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI) benefits in May 2011, alleging onset beginning November 2, 2009 (Tr. 198-206). Benefits were denied initially and on reconsideration (Tr. 125-40). Administrative Law Judge (ALJ) R.J. Payne held hearings July 8, 2013 and February 3, 2014. Psychological expert Donna Veraldi, Ph.D., and Kendall testified (Tr. 18-39, 42-67). February 13, 2014 ALJ Payne issued an unfavorable decision (Tr. 111-20). The Appeals Council denied review August 15, 2014 (Tr. 1-6). October 7, 2014, Kendall filed this action for judicial review pursuant to 42

ORDER - 1

U.S.C. § 405(g). ECF No. 1, 7.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the decision of the ALJ and the parties' briefs. They are only briefly summarized as necessary to explain the court's decision.

Plaintiff was 59 years old at onset. He has fourteen years of education. He testified he was terminated in 2009 from his last job "on a technicality" (sending an improper email) but felt the biggest reason was that he "didn't get along with people there and there were people that were afraid of me. And I think it was just pressure, that they decided I, I didn't fit there anymore." This job, as an engineering technician in the public works department of the city of Wenatchee, lasted about ten years. Before he was terminated, when he had problems with his supervisor, Kendall would "just go home." Prior to this job, he worked for the state of Alaska as an engineer for nine or twelve years. He alleges disability based on mental limitations. He has taken psychotropic medication for depression and ADHD for many years. He is not in mental health therapy, other than annual medication checks, because he lacks insurance (Tr. 21-26, 47, 76, 287, 295, 307).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423

ORDER - 2

(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process or determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. §404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

ORDER - 3

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

ORDER - 4

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Payne found plaintiff was insured through December 31, 2014 (Tr. 111, 113). At step one he found Kendall did not work at SGA levels after he applied for benefits (Tr. 113). At step two, he found plaintiff has medically determinable impairments, but does not have an impairment or combination that is severe (Tr. 113). The ALJ found Kendall less than fully credible (Tr. 115). The ALJ concluded Kendall was not disabled from onset, November 2, 2009, through date of the decision, February 13, 2014 (Tr. 120).

## ISSUES

Kendall alleges the ALJ failed to properly weight the opinions of examining and non-examining sources, resulting in error at step two. ECF No. 17 at 1. The Commissioner responds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence. She asks the court to affirm. ECF No. 18 at 2.

## DISCUSSION

*A. Weighing opinion evidence*

ORDER - 5

Kendall alleges the ALJ should have given more credit to the June 2013 and January 2014 opinions of Dr. Hopfenbeck, an examining psychiatrist. ECF No. 17 at 7-15, referring to Tr. 116-19, 305-10, 328-34. The Commissioner responds that the ALJ's reasons are specific, legitimate and supported by substantial evidence. ECF No. 18 at 2, 4-16.

The ALJ considered several opinions, addressed here in chronological order.

*Dr. O'Donnell*

The ALJ considered the November 2009 opinion of treating doctor Theodore O'Donnell, M.D. (Tr. 116, 282-83, 288 (noting O'Donnell is Kendall's primary care provider), 326-27)). Dr. O'Donnell indicates Kendall complained of depression, conflicts with his supervisor on the job, and said he was about to be terminated. The ALJ points out "Dr. O'Donnell noted depressed mood, affect was flat and sad, with no evidence of significant suicide, risk or thought disorder. He diagnosed depression, major with recent exacerbation, but suggested no limitations associated with the claimant's condition." (Tr. 116). The ALJ's summary omits significant detail, including Kendall's concern he will be "blackballed" as a civil engineer in his community due to his age and being fired; he cries; is distracted, indecisive and anxious, and has significant insomnia (Tr. 282). The ALJ notes in July 2012 Dr. O'Donnell assessed "depression, persistent, no immediate risk for suicide" (Tr. 117).

*Dr. Rowe*

The ALJ considered the July 21, 2011 opinion of examining psychologist Thomas Rowe, Ph.D. (Tr. 116, referring to Tr. 286-93). Dr. Rowe administered testing and opined Kendall "presents with at least a moderate level of depression" (Tr. 291). He diagnosed major depressive disorder, recurrent; dysthymia; cannabis abuse [smokes at least once a week] and rule out attention deficit hyperactivity disorder (ADHD). He opined cannabis use is certainly not indicated, given his

ORDER - 6

mood disorder (Tr. 290). He recommended psychotherapeutic treatment in addition to medication (Tr. 291). The ALJ characterizes this opinion as revealing "generally mild psychological symptoms." (Tr. 116).

*Dr. Palermo*

The ALJ considered the evaluation by Jennifer Palermo, Ph.D., performed about five months later, on December 6, 2011. (Tr. 116, referring to Tr. 294-98). She also diagnosed major depressive disorder, recurrent, moderate; dysthymia, cannabis abuse per prior records and r/o ADHD, predominantly inattentive type (Tr. 297). She assessed a GAF of 55, opined prognosis is "fair" but opined Kendall is capable of performing a least simple repetitive tasks in a work environment (Tr. 297-98). The ALJ purports to give great this opinion great weight "due to the consistency with objective evidence of very mild psychological abnormalities" (Tr. 116).

*Dr. Hopfenbeck*

The ALJ considered the opinion of psychiatrist James Hopfenbeck, M.D., who evaluated Kendall June 20, 2013, a few weeks before the hearing (Tr. 116-18, referring to Tr. 305-10). [After the hearing, on January 12, 2014, Dr. Hopfenbeck reviewed and commented on Dr. Veraldi's opinion. Tr. 328-34.] Like the other evaluators, he notes Kendall's mood was depressed and his affect restricted (Tr. 308). On Axis I, he diagnosed major depression, severe, recurrent and post-traumatic stress disorder. On Axis II he notes antisocial personality traits related to extreme self-isolating but no diagnosis. He assessed a GAF of 42 and described Kendall as "severely depressed." He opined Kendall's severe mental health impairments prevent him from working (Tr. 308, 310). The ALJ rejected this opinion as inconsistent with other treating and evaluating sources who "documented very mild psychological abnormalities" (Tr. 117).

The record does not support the ALJ's reason. Moreover, Dr. Hopfenbeck

notes Kendall's condition appeared to have worsened from prior evaluations, a logical reason his conclusions as to the severity of limitations differed. As noted, the other sources did not document very mild psychological abnormalities.

The ALJ's additional reasons are likewise erroneous or unsupported by the record. The timing of the evaluation does not mean the conclusions should be rejected. Nor does the psychiatrist's sympathy for Kendall likely play any role given that Dr. Hofenbeck evaluated Kendall but is not a treating source. The evidence similarly does not suggest the doctor relied primarily on Kendall's subjective reports.

*Dr. Veraldi*

The ALJ considered the opinion of testifying expert Donna Veraldi, Ph.D., who reviewed the record (Tr. 118, referring to Tr. 43-67, 311-23). She opined Kendall suffers from the medically determinable impairments of depressive disorder, dysthymia and cannabis abuse. She opined Kendall has no severe mental impairment.

The ALJ considered and gave some weight to the December 30, 2011, opinion of agency reviewing psychologist James Bailey, Ph.D. (Tr. 118-19, referring to Tr. 88-97, 98-107).

Dr. Veraldi's opinion that Kendall's impairments are not severe is not supported by the record. Every source who evaluated him found at least moderate impairment. Dr. Veraldi appears to rely on the lack of ongoing mental health counseling or treatment in finding no severe impairments. However, as discussed below, it appears she should not have relied on this reason alone. The ALJ clearly erred by favoring the opinions of reviewing sources over those of examining sources. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

B. *Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated

ORDER - 8

Kendall's credibility. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ's reasons are not clear, convincing and supported by the record.

Drug seeking behavior may be evidence of "a tendency to exaggerate pain." *See Edlund v. Massanari*, 253 F. 3d 1152, 1157 (9th Cir. 2001), but Kendall admitted he smokes marijuana. This is not drug seeking behavior, nor does it impugn credibility because Kendall was truthful. The ALJ erred by relying on this reason.

The ALJ relied on the lack of objective medical evidence supporting the severity of alleged symptoms. This is a misreading of the record. Treating and examining sources opined otherwise. *See e.g.*, Tr. 326 (April 2013, Dr. O'Donnell: at some risk for suicide).

The ALJ relied on the lack treatment. An inadequately explained or unexplained failure to seek treatment may impugn credibility. See *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)(lack of consistent treatment is a factor the ALJ may properly consider). Here, however, Kendall testified he had no medical insurance. At one point he told Dr. O'Donnell he could no longer afford adderall, a medication prescribed for ADHD, and a less expensive alternative was prescribed (Tr. 24-25, 55, 290, 296, 326-27). Moreover, Kendall's failure seek

ORDER - 9

ongoing mental health treatment does not serve to discredit his testimony. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F. 3d 1462, 1465 (9th Cir. 1991)(internal quotation marks omitted). Kendall's extremely limited daily activities similarly support rather than impugn his credibility. The ALJ also appears to have completely ignored Kendall's very strong work history, which enhances credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(ALJ may consider [claimant's] work record)(internal citation omitted).

Considered together, the ALJ's reasons for finding Kendall not credible do not rise to the level of clear and convincing. As such, his adverse credibility finding was not supported by substantial evidence.

*C. Step two*

A diagnosis may establish a medically determinable impairment, but does not alone establish an impairment is severe. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 )(internal quotation marks omitted). Step two is a "de minimis screening device [used] to dispose of groundless claims," and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Webb*, 433 F. 3d a 687, citing *Smolen*, 80 F.3d at 1290; S.S.R. 85-28.

The record here includes evidence of problems sufficient to pass the de minimis threshold of step two. Kendall appeared not to have showered and had several days' growth of beard and dwells on suicide (Tr. 308-09). Unable to make house payments and lost his house; called suicide prevention line a week ago (Tr. 326).

ORDER - 10

The ALJ should have found Kendall suffers from severe impairments, that is, impairments that have more a minimal effect on the ability to work. Kendall alleges that, had the opinions of nearly all of the medical sources been properly credited, the ALJ would have found he suffers from severe impairments and would not have ended the analysis at step two. ECF No. 17 at 7-17.

Kendall is correct.

The ALJ erred when he weighed the evidence and error at step two is clearly harmful when the ALJ's analysis ends at step two and there is evidence a claimant, as here, suffers severe impairments.

## CONCLUSION

After review the Court finds the ALJ's decision is not supported by substantial evidence and contains harmful legal error.

**IT IS ORDERED**:

1. Plaintiff's motion for summary judgment, **ECF No. 17**, is **granted.** The matter is reversed and remanded for further administrative proceedings pursuant to 42 U.S.C. §405(g), sentence four.

2. Defendant's motion for summary judgment, ECF No. 18, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of plaintiff, and **CLOSE** the file.

DATED this 27th day of April, 2015.

*s/James P. Hutton*

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE